RECEIVED
SDNY PRO SE OFFICE   RECEIVED
SDNY PRO SE OFFICE
2025 FEB -3  AM 8: 41   2025 JAN 34  AM 8: 41

Case
24-CV-4603(LTS)

Laura Taylor Swan
Chief United States District Judge

These are all the exhit to the court
what Judge ask for.

Signature

John Cweeg

Date 2-3-2025

CC:

SUPREME COURT OF THE STATE OF NEW YORK          NO FEE
KINGS COUNTY
320 JAY STREET
BROOKLYN, NY 11201

CERTIFICATE OF DISPOSITION INDICTMENT

DATE: 04/23/2018

CERTIFICATE OF DISPOSITION NUMBER: 56354

PEOPLE OF THE STATE OF NEW YORK
VS.

| | |
|---|---|
| CASE NUMBER: | 07140-86 |
| LOWER COURT NUMBER(S): | 6K055259 |
| DATE OF ARREST: | 10/08/1986 |
| ARREST #: | K86055876 |
| DATE OF BIRTH: | 08/17/1966 |
| DATE FILED: | 11/13/1986 |

CURRY,JOHN

DEFENDANT

I HEREBY CERTIFY THAT IT APPEARS FROM AN EXAMINATION OF THE RECORDS
ON FILE IN THIS OFFICE THAT ON 02/16/1988 THE ABOVE NAMED DEFENDANT WAS
CONVICTED OF THE CRIME(S) BELOW BEFORE JUSTICE   EGITTO,FRANCIS THEN A
JUSTICE OF THIS COURT.

MURDER 2nd DEGREE PL  125.25 02 AF
KIDNAPPING 1st DEGREE PL  135.25 03 AF
MURDER 2nd DEGREE PL  125.25 01 AF
MANSLAUGHTER 1st DEGREE PL  125.20 01 BF

THAT ON 03/23/1988, UPON THE AFORESAID CONVICTION BY PLEA  THE HONORABLE
EGITTO,FRANCIS   THEN A JUDGE OF THIS COURT, SENTENCED THE DEFENDANT
TO

MURDER 2nd DEGREE PL  125.25 02 AF
IMPRISONMENT = 25  YEAR(S)  TO LIFE

KIDNAPPING 1st DEGREE PL  135.25 03 AF
IMPRISONMENT = 25  YEAR(S)  TO LIFE

MURDER 2nd DEGREE PL  125.25 01 AF
IMPRISONMENT = 25  YEAR(S)  TO LIFE

MANSLAUGHTER 1st DEGREE PL  125.20 01 BF
IMPRISONMENT = 100 MONTH(S)  TO 25 YEAR(S)

*MY CONVICTIONS ONLY (NO SEX OFFENSES)* [handwritten annotation]

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND AND AFFIXED MY
OFFICIAL SEAL ON THIS DATE 04/23/2018.

COURT CLERK

**SENTENCE & ORDER OF COMMITMENT**

SUPREME COURT OF THE STATE OF NEW YORK

Part __39__ _____ County __Kings__

IND. NO. __7140__ / YEAR __86__

The People of the State of New York

__John Curry__

vs.

DEFENDANT

Date: __3/23/88__

Present: Honorable: __F. X. Egitto__
JUSTICE

| SEX | AGE | NYSID NUMBER |
|-----|-----|--------------|
| M | 20 | 2 7 8 2 7 3 5 P |

__88 A 2854__

The above-named defendant having been convicted of the crime(s) of:

(1) __Man 1°__  (2) __Mur 2°__  (3) __Mur 2°__  (4) __Kidnap 1°__

IT IS ORDERED that the said defendant be and hereby is sentenced to an indeterminate term of imprisonment which shall have a maximum term of: (1) __25 yrs__  (2) __life__  (3) __life__  (4) __life__

and a minimum term of: (1) __8 1/3 yrs__  (2) __25 yrs__  (3) __25 yrs__  (4) __25 yrs__

☐ as a second felony offender     ☐ second violent felony offender

☐ as a persistent felony offender     ☐ as a persistent violent felony offender

☐ as a youthful offender

☐ a definite term of imprisonment of _____

☐ pay a fine of _____ or a term of _____ until fine is satisfied

and that the sentence herein shall run concurrent with __each other__ consecutive to _____ and that the said

defendant be and hereby is committed to the custody of the:

☒ Department of Correctional Services of the State of New York until released in accordance with the law, and the Commissioner of Corrections of the City of New York is directed to deliver him/her to the

☒ Ossining Correctional Facility, Ossining, NY (males 21 yrs. or older)

☐ Elmira Reception Center, Elmira, NY (males 16 to 20 yrs.)

☐ Bedford Hills Correctional Facility, Bedford Hills, NY (females 16 yrs. and over)

☐ Department of Correction of the City of New York until released in accordance with the law and be delivered to:

☐ New York City Correctional Institution for men/women

REMARKS: _____

__A. N. Durso__
Clerk of Court

by __Barbara Dowling__
Signature            Court Clerk

A true extract from the minutes

☐ THIRD COPY FORWARDED TO BOARD OF ELECTIONS.

06/29/2007  14:11    5855912002609    ADMIN    PAGE  02/07

NEW YORK CITY DEPARTMENT OF PROB—

SUPREME    COURT    KINGS    COUNTY    88A2854

| REPORT: PRE-SENTENCE ☒ | PRO FORMA ☐ | PRE-PLEADING ☐ | PROBATION OFFICER ANTHONY VULPIS |
|---|---|---|---|

| DOCKET / INDICTMENT # (S) | DATE(S) FILED | COURT CONTROL # (S) | PROBATION CASE # KS 88--00865 |
|---|---|---|---|
| 7140/86 | — | #10095692 K | NYSID # 2782735 P |
| | | | F.B.I. # 8363900AA6 |

| | LAST NAME | FIRST | MIDDLE | DATE OF BIRTH 8/17/66 | CITIZEN OF USA |
|---|---|---|---|---|---|
| RE: | | | | | |
| A.K.A. | CURRY, JOHN | | | PLACE OF BIRTH Brooklyn, NY | |

RESIDENCE    516 Chauncey Street, Apt. #2B, Brooklyn, NY 11232

| LIVES WITH mother and siblings | MARITAL STATUS Single | HEIGHT 5'7" | WEIGHT 125 | SEX M. | RACE Blk | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|

CO-DEFENDANTS / ACCOMPLICES    STATUS

None.

| DATE(S) OF OFFENSE 10/6/86 | DATE(S) OF ARREST 10/8/86 | DATE(S) OF CONVICTION/ARREST 2/16/88 | LIBERTY ☐ CUSTODY ☒ |
|---|---|---|---|
| | | | PLEA ☐ TRIAL ☒ |

| FINAL CHARGE / CONVICTED OF: (Use Nomenclature) | DOCKET / INFORMATION / INDICTMENT CHARGES |
|---|---|
| MANSLAUGHTER 1 MURDER 2 (2 cts) KIDNAPPING 1. | MURDER 2 (3 cts); KIDNAPPING 1 |

CONVICTION CHARGE CODE [CVC]

| LAW | | SECTION | | | | SUBDIV | CL | OFF | ATT | DEG |
|---|---|---|---|---|---|---|---|---|---|---|
| P | I | 1 | 2 | 5 | 2 | 5 | - | - | A1 | F | - | 2 |

COVERED CHARGES

| OTHER PENDING CHARGES? YES ☐ NO ☒ | DRUGS: | EXAM DATE | CERTIFIED ADDICT ☐ NON-ADDICT ☐ |
|---|---|---|---|
| YOUTHFUL OFFENDER: REQUIRED YES ☐ NO ☐  ELIGIBLE YES ☒ NO ☐ | CERTIFICATE OF RELIEF FROM DISABILITIES: | | ELIGIBLE YES ☐ NO ☐ |

| JUDGE FRANCIS X. EGITTO | PART 39 | DATE(S) OF SENTENCE / PLEADING HEARING 3/8/88 |
|---|---|---|

| A.D.A. Eric Bjornily | COUNSEL AND ADDRESS Leo Kimmel  26 Court Street, Bklyn, NY | #643-955( |
|---|---|---|

DISPOSITION

1891/1-0385R    3/8/88

Verdict Sheet                                                    Page 2.
John Curry
Ind. # 7140/86

| COUNT | CHARGE | NOT GUILTY | GUILTY |
|---|---|---|---|
| | Manslaughter in the Second Degree - Recklessness -Consciously disregards substantial and unjustifiable risk of death and thereby causes death.<br><br>IF YOU FIND THE DEFENDANT NOT GUILTY OF MANSLAUGHTER IN THE SECOND DEGREE (RECKLESSNESS) YOU MAY GO ON TO CONSIDER THE CHARGE OF<br><br>Criminally Negligent Homicide - Fails to perceive a substantial and unjustifiable risk of death and thereby causes death. | —<br><br>— | —<br><br>— |
| 3 | Murder in the Second Degree - Felony Murder - In the Course of the crime of Kidnapping in the First or Second Degrees Defendant causes the death of a person other than a participant. | — | ✓ |
| 4 | Kidnapping in the First Degree - Abducts person who dies before he is able to be returned to safety.<br><br>IF YOU FIND THE DEFENDANT NOT GUILTY OF KIDNAPPING IN THE FIRST DEGREE YOU MAY GO ON TO CONSIDER THE CHARGE OF<br><br>Kidnapping in the Second Degree - Abducts person. | —<br><br>— | ✓<br><br>— |

VERDICT SHEET

THE PEOPLE OF THE STATE OF NEW YORK

v

JOHN CURRY
INDICTMENT NO.  7140/86

Criminal Term
Part 39
Egitto, J.
February 16, 1988

| COUNT | CHARGE | NOT GUILTY | GUILTY |
|---|---|---|---|
| 1 | Murder in the Second Degree - Intentional - With intent to cause the death of another person, defendant causes the death of such person. | ✓ | |
| | IF YOU FIND THE DEFENDANT NOT GUILTY OF MURDER IN THE SECOND DEGREE (INTENTIONAL) YOU MAY GO ON TO CONSIDER THE CHARGE OF | | |
| | Manslaughter in the First Degree - With intent to cause serious physical injury to another person, defendant causes death of such person. | | ✓ |
| 2 | Murder in the Second Degree - Depraved Indifference - Recklessly creates a grave risk of death and thereby causes death. | | ✓ |
| | IF YOU FIND THE DEFENDANT NOT GUILTY OF MURDER IN THE SECOND DEGREE (DEPRAVED INDIFFERENCE) YOU MAY GO ON TO CONSIDER THE CHARGE OF | | |

NYSID: 02782735P    ORI: NY03030G5    NYCPD PCT 005

| | | |
|---|---|---|
| NYSID: 02782735P | FBI Number: 836390AA6 | Current Transaction Name: JOHN CURR... |
| Fax Number: M43341 | Current Arrest Number: M18660734 | DOB: August 17, 1966 |
| Probation Client ID#: 279288 | III Status: Criminal record in other states or in multiple FBI files for NYS | |

⊕ Alerts

* See Additional information at the bottom of this response for more banners pertaining to the criminal history

PAROLE ABSCONDER

This individual is currently listed in the New York State Sex Offender Registry

History Consolidation - Previously identified under the following NYSID number(s). Please change your records t... consolidation of this number(s) to the current NYSID number 2782735P.

| Consolidated from NYSID | Consolidated To NYSID | Consolidation Date |
|---|---|---|
| 2795418Q | 2782735P | September 14, 1984 |

Wanted information included in this record.

Violent Felony offense(s) on file

DNA PROFILE IS ON FILE IN THE DNA DATABANK If more information is required call DCJS Office of Fo... Services at 1-800-262-3257

Currently under Parole Supervision by Bureau of Special Services

⊕ New York State Arrest/Conviction/Warrant Information

Total Arrests: 8    Date of Earliest Arrest: December 07, 1982    Latest Prior Arrest Date: ...

| Total Arrests: | 8 | | Total Arraigned Arrests: | 2 | | Total Open Cases: | 2 | Cycles (max 5) |
|---|---|---|---|---|---|---|---|---|
| Felony: | 8 | | Felony: | 1 | | | | |
| Violent Felony: | 5 | | Violent Felony: | 1 | | Felony: | 2 | 8,3 |
| Firearm: | 1 | | Firearm: | 0 | | Violent Felony: | 1 | 3 |
| Misdemeanor: | 0 | | Misdemeanor: | 0 | | Misdemeanor: | 0 | |
| Other: | 0 | | Other: | 0 | | Open ACD: | 0 | |
| | | | | | | Non Docketed Cases: | 2 | 8,3 |
| | | | | | | Other: | 0 | |

| Total Convictions: | 5 | Cycles (max 5) | Warrant Information: | | Cycles (max 5) | DOC Classification: | |
|---|---|---|---|---|---|---|---|
| Felony: | 1 | 7 | | | | | |
| Violent Felony: | 1 | 7 | Failure to Appear Counts: | 2 | 2,1 | Escape Charges: | 0 |
| Firearm: | 0 | | | | | Sex Offender Convictions: | 0 |
| Misdemeanor: | 4 | 6,5,4,2. | Total Open: | 1 | 1 | | |
| Other: | 0 | | Active NYC: | 1 | 1 | Probation Revoc: | 1 |
| YO Adjud.: | 1 | 1 | | | | Parole Revoc: | 0 |

⊕ Identification Information

**NEW YORK STATE** | Corrections and Community Supervision

## VIOLATION OF RELEASE REPORT

### CHARGE SHEET

| | |
|---|---|
| Warrant Issued: ☒ | No Warrant Issued: ☐ |
| Name: CURRY, JOHN | Date Released: **11/2/2022** |
| NYSID: 02782735P | Date of Warrant: M/D/YYYY |
| DIN: 88A2854 | Warrant #: 839935 A007150 |
| DOCCS Releasing Facility: **MARCY** | Date Warrant Enforced: M/D/YYYY |
| Date of Birth: 8/17/1966 | Location Warrant Enforced: County Facility |
| COMPAS Level: 1 | Sexually Motivated Felony: **Yes** |
| | Hate Crime: **No** |
| | Crime of Terrorism: **No** |
| | Delinquency Date: **8/2/2023** |

| Instant Offense | Sentence |
|---|---|
| MURDER 2ND | 25-00 LIFE |
| KIDNAPPING 1ST* | 25-00 LIFE |
| MANSLAUGHTER 1ST | 08-04 25-00 |

Time on Parole:    ## Years; ## Months  ## Days

Since his release, the above-named individual has violated the Conditions of Release in the following manner.

| | |
|---|---|
| Charge #1 | John Curry violated Rule #1 of the conditions of release, in that on 8/3/23, and thereafter they failed to make their office report to the Man VI Area Office located at 314 W. 40 St. NY, NY. |
| Charge #2 | John Curry violated Rule # 13 of the Conditions of Release in that on 8/2/2023 at approximately 6:35 am at DHS Shelter located at 2524 Creston Ave Bronx, NY, they failed to abide by their curfew directing them to remain in their approved residence between the hours of 8pm-8am daily |
| Charge #3 | John Curry violated Rule # 13 of the Conditions of Release in that on 8/3/2023 at approximately 9:57 pm at DHS Shelter located at 2524 Creston Ave Bronx, NY, they failed to abide by their curfew directing them to remain in their approved residence between the hours of 8pm-8am daily |
| Charge #4 | John Curry violated Rule # 13 of the Conditions of Release in that on 8/15/2023 at approximately 9:07 pm at DHS Shelter located at 2524 Creston Ave Bronx, NY, they failed to abide by their curfew directing them to remain in their approved residence between the hours of 8pm-8am daily |
| Charge #5 | John Curry violated Rule # 13 of the Conditions of Release in that on 8/22/2023 at approximately 6:44 am at DHS Shelter located at 2524 Creston Ave Bronx, NY, they failed to abide by their curfew directing them to remain in their approved residence between the hours of 8pm-8am daily |
| Charge #6 | John Curry violated Rule # 13 of the Conditions of Release in that on 8/23/2023 at approximately 6:02 pm at DHS Shelter located at 2524 Creston Ave Bronx, NY, they failed to abide by their curfew directing them to remain in their approved residence between the hours of 8pm-8am daily |

Page 1 of 2

CS4003

# NEW YORK STATE | Corrections and Community Supervision

## VIOLATION OF RELEASE REPORT

### CASE SUMMARY

Name: CURRY, JOHN

NYSID: 02782735P

Warrant #: **823473**

DIN: 88A2854

**CRIME OF CONVICTION & CURRENT SENTENCE**

John Curry is a 56 year old male who is presently serving a sentence of 25-00 LIFE for 1 count of MURDER 2ND*; a sentence of 25-00 LIFE for 1 count of KIDNAPPING 1ST, and a sentence of 08-04 25-00 for 1 count of MANSLAUGHTER 1ST. The subject was sentenced on 03/23/1988 by the Honorable Judge FX Egitto of the Kings County Supreme Court. The subject has a Maximum Expiration of Lifetime. It is also noted that the subject is supervised as a COMPAS Level 1 Level 3 Sex Offender.

**DESCRIPTION OF INSTANT OFFENSE**

The instant offense the subject went to home of his girlfriend and would not allow her or her children to leave the premises for the entire weekend. During the weekend, the subject abducted his girlfriend's 3-year-old child. The next day the child was found dead of head wounds. The subject claims the child fell through the floor of an abandoned building.

**CRIMINAL HISTORY**

The subject's criminal history began in 1967 (age 14) spanning involvement in both family and criminal court. The subject has had (5) contacts with family court authorities for mostly nonviolent crimes. The subject has had one arrest for Sodomy as a juvenile. The subject's history includes (9) arrests, yielding (6) convictions (all misdemeanor). The subject history shows a pattern of aggressive, assaultive behavior with sex offenses, and violence against women prominent. In 1985, and 1986, following arguments with his mother, he, on one occasion hit her with a pipe, and on another occasion stabbed her in the arm. In 1986, he abducted his girlfriend, and held her for numerous hours while menacing her with a knife. Also, on (2) prior occasions the subject had been arrested for sex crimes.

The subject has no prior parole or probation terms.

**PRIOR TERMS OF PROBATION/PAROLE**

**PRIOR VIOLATIONS ON CURRENT TERM**

This subject has (6) prior violation on this current NYSDOCCS term. An absconder warrant was issued 10/24/18, and the subject was revoke and restored on 2/14/19. The subject assaulted another resident at the Men's Shelter, and a warrant was issued and the subject was revoke and restored on 11/20/19. The subject was arrested for Assault and the warrant was lifted on 12/9/19. On 12/27/19, an Absconder warrant was issued, and the subject was restored Due to Covid 19. On 3/31/20, an Absconder Warrant was issued, and the warrant was lifted. On 12/24/20, an absconder warrant was issued for Sex Offender Registry Violation, and the subject was sentenced to a 6 month hold on 10/18/21.

**GENERAL ADJUSTMENT TO PAROLE SUPERVISION**

The subject's overall adjustment has been poor. The subject's Board Mandated conditions, curfew, residence and programming were reviewed. The subject failed to return to their approved residence as directed, nor did they return for their office report on 8/3/23 and thereafter. The subject also discontinued programming.

**CURRENT VIOLATIVE BEHAVIOR**

The subject failed to make their office report on 8/3/23 and thereafter to the Manhattan VI Area Office located at 314 W. 40 St NY, NY. Further, home visits yielded negative results on

Page 1 of 2

CS4003

NEW YORK STATE | Corrections and Community Supervision

| | |
|---|---|
| Charge #7 | John Curry violated Rule #4 of the conditions of release, in that on or about 8/23/2023 he failed to discuss with his Parole Officer a change in his residence at DHS Shelter located at 2524 Creston Ave, Bronx, NY |
| Charge #8 | John Curry violated Rule #3 of the Conditions of Release in that on or about 8/23/2023 they absconded from the Department of Corrections and Community Supervision. |
| Charge #9 | John Curry violated Rule #4 of the Conditions of Release in that on or about 8/2/2023 he failed to discuss with his Parole Officer a change in his program status at Shiloh located at 566 7th Ave St, NY, NY |

POSSIBLE WITNESSES

Click here to enter text.

DOCUMENTS PROVIDED AT TIME OF SERVICE

Violation of Release Report
Special Conditions

9011

Page 2 of 2

CS4003

**NEW YORK STATE | Corrections and Community Supervision**

SUPPLEMENTARY VIOLATION OF RELEASE REPORT  2

Name: CURRY, JOHN

NYSID: 02782735P

Warrant #: A007150

DIN: 88A2854

**INTRODUCTION**

On 8/31/2023 a Violation of Release Report was submitted charging John Curry with Rule # 1, Rule #3, (2), Rule#4, and Rule (5) #13. The subject has their Final Hearing 12/22/23. Adjourned 3/19/24.

**ADDITIONAL INFORMATION**

The subject was released on 12/22/23, and was taken into custody, (M23654871), for (1) count of Level 3/Sex Pred-VER90D-ist Offense. The subject has a DAT, no Docket#, with a next court date in New York Criminal Court on 1/9/24 at 9am, ADA Rivard, 212 335-9974.

**ADDITIONAL CHARGES**

Charge#17

John Curry violated Rule #8 of the conditions of release, when their behavior violated the provisions of law to which they are subject which provides for a penalty of imprisonment, in that on or about 8/21/23 at approximately 3:01pm inside of the Sex Offender Monitoring Unit located at 100 Centre St NY, NY, they failed as a Level 3 Sex Offender to personally verify their address at the New York City Department Sex Offender Monitoring Unit every Ninety Days as required by the New York State Corrections Law 168F3.

**PRESENT STATUS**

The subject was released 12/22/23, and reported on 1/3/23 for his arrival, a homevisit to their approved residence was conducted on 1/3/24, and found the subject not inside his approved residence during curfew hours. The subject will report weekly, and re-engagement efforts will continue. The subject had a subsequent court date on 1/9/24 at 9am in New York Criminal Court at 9am, with the next court date of 2/15/24 at 9am, Part F.  ADA Rivard, 212 335-9974 has been contacted.

**ADDITIONAL POSSIBLE WITNESSES**

NYPD Detective Adam Palmer (5th Pct)

**DOCUMENTS PROVIDED**

VORR packet

L. Black / PO

_____
Signature

_____
Name/Title

1/11/24
_____
Date

A. Ramirez / SPO

_____
Signature

_____
Name/Title

1/11/04
_____
Date

Page 1 of 1

CS4003

SENTENCED: ☑ INDETERMINATE

**Curry, John**

and sentenced in the county of ___Kings___ at a term of the ___Supreme___ Court, Judge ___F.X.Egitto___ presiding on the ___last d___

now was convicted of ___MANSLAUGHTER 1ST-B___

___23___ day of ___March___ 19___98___ for the term of ___25-0-0/Life___ the maximum term of which sentence expires on the ___

___Life___ ☒ has agreed to abide by the conditions to which (he) has signed (his) name below, and is,

hereby granted ☐ Conditional Release ☒ Parole by the Board of Parole, by virtue of the authority conferred by New York State Law.

It is hereby directed that (he) ☒ be released and placed under legal jurisdiction of the Department of Corrections and Community Supervision

until the ___last___ day of ___Life___ 20__

Signed this ___27___ day of ___June___ 2017 at ___Auburn Correctional Facility___

Date of Release: ___December 29, 2017___ Board of Parole:

BKLYN IV/NY ASSESSMENT
400 E BELLEVUE 30TH ST
New York, New York 10016 Tel. (212-481-8853)

___Curry, John   68A2854___

To search and inspection. I understand that Parole Supervision is defined by these Conditions of Release and all other conditions that may be imposed upon me.

Board or its representatives. I understand that my violation of these conditions may result in the revocation of my release.

## CONDITIONS OF RELEASE

**Immediately**

1. I will proceed directly to the area to which I have been released, and, within twenty-four hours after my release, make my arrival report to the Community Supervision Office indicated below, unless other instructions are designated on my release agreement. SPO Reading/PO Keppris

2. I will make office and/or written reports as directed. Bronx II Area Office, 14 Bruckner Blvd., Bronx, NY 104___
(718) 282-7494

3. I will not leave the State of New York or any other state to which I am released or transferred, or any area defined in writing by my Parole Officer, without my Parole Officer's permission.

4. I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my person, residence and property. I will discuss any proposed changes in my residence, employment or program status with my Parole Officer. I understand that I have an immediate and continuing duty to notify my Parole Officer of any changes in my residence, employment or program status when circumstances beyond my control make prior discussion impossible.

5. I will reply promptly, fully and truthfully to any inquiry of or communication by my Parole Officer or other representative of the Department of Corrections and Community Supervision.

6. I will notify my Parole Officer immediately any time I am in contact with or arrested by any law enforcement agency. I understand that I have a continuing duty to notify my Parole Officer of such contact or arrest.

7. I will not be in the company of or fraternize with any person I know to have a criminal record or whom I know to have been adjudicated a Youthful Offender except for accidental encounters in public places, work, school or in any other instance with the permission of my Parole Officer.

8. I will not behave in such a manner as to violate the provisions of any law to which I am subject which provide for a penalty of imprisonment, nor will my behavior threaten the safety or well-being of myself or others.

9. I will not own, possess, or purchase any shotgun, rifle or firearm of any type without the written permission of my Parole Officer. I will not own, possess or purchase any deadly weapon as defined in the Penal Law or any dangerous knife, dirk, razor, stiletto, or imitation pistol, or any instrument readily capable of causing physical injury without a satisfactory explanation for ownership, possession or purchase.

10. In the event that I leave the jurisdiction of the State of New York, I hereby waive my right to resist extradition to the State of New York from any state in the Union and from any territory or country outside the United States. This waiver shall be in full force and effect until I am discharged from Parole or Conditional Release. I fully understand that I have the right under the Constitution of the United States and under law to contest an effort to extradite me from another state and return me to New York, and I freely and knowingly waive this right as a condition of my Parole or Conditional Release.

11. I will not use or possess any drug paraphernalia or use or possess any controlled substance without proper medical authorization.

12. Special Conditions:

**See attached continuation sheet.**

**For assistance on weekends and after hours, contact the Command Center at**
**212/239-6159.**

13. I will fully comply with the instructions of my Parole Officer and obey such special additional written conditions as he or she, a Member of the Board of Parole or an authorized representative of the Department of Corrections and Community Supervision may impose.

I hereby certify that I have read and that I understand the foregoing conditions of my release and that I have received a copy of the Certificate of Release.

Signed this ___24th___ day of ___October___ 20 17
Released: ___

Witness: ___

COPY TO COMMUNITY SUPERVISION FIELD / AREA OFFICE

Exhibit F

3    said?

4         A.    That's true.  The way this was done was

5    we asked him to read.  He wasn't able to read it.

6         Q.    In your report, do you have your report

7    before you?

8         A.    Yes.

9         Q.    On the first page, looking at the last

                                                      360

1         Summation - People

2    have."

3         Now, she said that in her testimony.  She

4    had a conversation that night with Ramona

5    DeBoard.  Now, what conflict does this refer

6    to?  Remember, according to all the testimony

7    in this case, both sides, child was taken from

8    the apartment at a point when Ramona DeBoard

9    was absent from the apartment.  He did not

10   again make contact with her.  He claims he

11   tried to return the child to her and she was

12   not home.  That is what he claims.  And then

13   came back to Brooklyn with the child and

14   brought it to his mother's house.  They did

15   not have contact within that period of time.

16   So what conflict is Mrs. Curry talking about?

17   It can only mean the conflict that took place

18   before John Curry left that apartment.

19        In addition, ladies and gentlemen, Mrs.

361

1    Summation - People

2    apartment in Manhattan and bring it to

3    Brooklyn, as he had done once before with her

4    older child, it is clear from the testimony of

5    both Ramona DeBoard and the defendant's own

6    mother that he did not have permission to take

7    the child from the apartment in Brooklyn.

8        Clearly, Ramona DeBoard didn't want him

9    to have the child and the defendant's own

10   mother told him he could not have the child,

11   told him he could not take the child out of

12   the apartment.

13       The indictment charges an abduction in

14   Brooklyn.  I submit to you ladies and

15   gentlemen by both Ramona DeBoard and the

16   defendant's own mother's account of the night

17   in question, he had no one's permission, not

18   Ramona DeBoard, not even his mother with whom

19   Ramona DeBoard had entrusted the child.  He

362

Summation - People

1

2     gentlemen is clear from the testimony of both

3     Ramona DeBoard and the defendant's own mother

4     and that is the conduct from which the charge

5     of kidnapping arises.

6          She tells you, Mrs. Curry, that the child

7     was returned by the defendant.  Let me go back

8     a minute. She indicates when she put the child

9     to bed she fed it, the child was okay, he was

10    in good condition and Ramona also told you she

11    spoke with her child on the phone and

12    everything seemed fine to her when she spoke

13    with him on the phone. Mrs. Curry tells you

14    the child is returned to her apartment by her

15    son coming again through this fire escape,

16    through the abandoned building, through the

17    fire escape into the apartment and the child

18    is now returned unconscious.

19          It is clear that these injuries were

1      Summation - People

2      walked off with the defendant because he liked

3      him.  A three year old child is not capable of

4      giving any kind of consent.

5          Mr. Avanzino asked you and I will ask you

6      also, please listen carefully to the Judge's

7      instructions on the law.  That is extremely

8      important.  You've heard all the testimony and

9      you may have in your own mind even at this

10     point a pretty good idea as to whether you

11     believe the facts are, what you believe

12     happened that night from all of the testimony

13     you've heard, but you still can't know how you

14     should vote on each count.  You still can't

15     know what the proper verdict is on each count

16     until you know what the law is with respect to

17     each count.

18         Mrs. Curry tells you this child was taken

19     from her apartment without permission.  She,

20     in fact, expressly told him not to take the

21     child.

22         Ramona DeBoard testified, told you she

23     had known the defendant for some two months,

24     that they had slept together on several

25     occasion, that he came to her apartment on a

Summation - People

    She told you that she had this
understanding with the mother, that she
believed her child was safe where he was and
that the child would be returned to her in the
morning.

    That may not be the way you would have
handled that situation, ladies and gentlemen,
and you may question her judgment.  She is not
on trial here.  Her judgment is not on trial
or even in question.

    MR. AVANZINO: Objection.

    THE COURT:  Sustained.  Don't go into
who is on trial and who is not on trial.

    MR. BJORNEBY: I think the jury knows
who is on trial.

    THE COURT:  Please, Mr. Bjorneby, just
go into your summation.

    MR. BJORNEBY: I am.  She told you, and
this is very interesting language she used,
she had a conversation with Ramona DeBoard.
Apparently, Ramona told her certain things in
conversation and Mrs. Curry.  In her testimony
on page 78, "I didn't want my son to return
the baby because of the conflict that they did

1    Summation - People

2    unconscious, caused two hematomas, caused

3    swelling of the brain, which ultimately

4    resulted in its death.

5         Now, you heard testimony from Veronica

6    Curry.  She is the mother of the defendant.  I

7    say that to you ladies and gentlemen, not by

8    way off suggesting to you, that you should not

9    accept or believe her testimony.  I submit to

10   you that Veronica Curry testified truthfully

11   in this matter.  She is not a witness either

12   in as far as these injuries are concerned.

13   She did not see the child sustain the

14   injuries, but this is what she did see and

15   this is what she did testify to you, ladies

16   and gentlemen.  If you have any problem in

17   recollecting any of this, please it's in the

18   record and it can be read back to you.  It has

19   already been typed and it can be read back to

20   you. She told you she took the child from her

21   son sometime Sunday night and she told you

22   that she spoke with Ramona DeBoard on the

23   phone and that she agreed that she would

24   return the child in the morning, which is what

25   was testified to by Ramona DeBoard as well.

Summation - People

on, was not dressed.  She indicated it was
even at that point still too cold for the
child to go out in the light clothing that it
had on.

    She told you the same thing that Ramona
DeBoard told you, which was that the two
women, the two mothers agreed the child would
stay with Mrs. Curry overnight because it was
already at this point midnight or twelve
thirty in the morning and the child would be
returned the next morning.

    Remember, ladies and gentlemen, what is
important here and what is at issue here is
not whether that is the arrangement you would
have made had this been your child involved.
In fact, this is the arrangement testified to
by both Mrs. Curry and by Ramona DeBoard.  It
is clear that that is in fact the arrangement
they made.

    Ramona told you, testified that the next
time she called at seven in the morning the
child was not at Mrs. Curry's house any
longer.  She then called back later on
indicating to her she should get over to

288

1                    Goldman - Cross

2            MR. BJORNEBY:  Judge, I'm not bound by

3    that.

4            THE COURT:  Overruled.

5            MR. BJORNEBY:  Thank you.

6      A.      He seemed aware that there were certain

7    criminal charges for which a person can be arrested

8    by the police and punished if found guilty.

9      Q.      Okay.  Did he understand that to take

10   another person's child without permission was

11   wrong?

12           THE COURT:  Without conceding that he did

13   or he didn't.

14           MR. BJORNEBY:  Oh, of course, I just want

15   to know if he understood the right and wrong

16   involved in this particular issue.

17           MR. AVANZINO:  Judge, I'm going to object

18   to that and I'd like a sidebar on this.

19           THE COURT:  Overruled.  Does he

20

1        Curry - Sentence

2    the stage where he would not seek the murder

3    conviction. After a long colloquy, even after

4    we selected the jury, which is something I

5    never do, after long colloquy I tell Mr.

6    Curry: "If there's a conviction even of the

7    kidnapping, the law says I must not, I may

8    not, that I have discretion, but I must

9    sentence you to a term of imprisonment of 15

10   to 25 years to life.

11       "Do you understand that?"

12       The defendant nodded yes.

13   "THE COURT: The People have offered you a

14   plea to a lesser count which carries

15   eight-and-a-third to twenty-five. Now, you

16   told your lawyer you didn't want to accept

17   that plea, is that right?

18       "THE DEFENDANT: Yes, I did.

19       "THE COURT: Is anybody forcing you not to

Curry - Sentence

with the trial?

   "THE DEFENDANT: Yes."

      Then we proceeded with the openings to --
with my preliminary instructions to the jury.
We were talking about the defendant
testifying.  When Mr. Avanzino told me after a
witness by the name of Battle finished
testifying, I told Mr. Avanzino Dr. Goldman
was out in the corridor because Mr. Avanzino
called Mr. Goldman as a defense witness.  I
asked if he wanted to talk to him.  He said,
"I'd like to."  We would take a few minutes.
I excused the jury for a few minutes.  And
then we came back and before the jury was
brought into the courtroom Mr. Avanzino
stated, "Your Honor, before the jury comes in,
I'd like to place something on the record.  I
have spoken to Mr. Curry at length especially
yesterday, and after that discussion I am
convinced Mr. Curry could aid his case in
testifying before this jury.  I have advised
him of this.  I have advised his mother of
that who has been participating with me since
the case started as it relates to the

18

Curry - Sentence

1

2    last chance, we may be able to help John

3    Curry. Regardless of his mother or anything

4    that went before, there's one last chance we

5    can help John Curry, that is, you can. I'm

6    going to ask this Court to really seriously

7    consider it. I know he's got a bad record. I

8    know he's got a background. I'm aware of the

9    fact he's had five juvenile arrests. I'm

10   aware the fact he might have had eight or nine

11   adult arrests. They were all heaped upon him,

12   so to speak, because of the intolerable

13   conditions at home. I'm asking this Court to

14   use as hope leniency in sentencing of Mr.

15   Curry.

16        THE COURT: Anything you want to say,

17   Mr. Curry. Is that no?

18        THE DEFENDANT: No.

19        MR. BJORNEBY: Can I respond to one

People - V. Curry - Cross

Q.    Let me ask you this:  This lady Mona the mother of the child, had you ever met her?

A.    No, I haven't.

Q.    You did speak to her on the telephone; is that correct?

A.    Yes, I have.

Q.    How often?

A.    On several occasions I talked to her.

Q.    Did you know where she lived?

A.    No, I didn't.

Q.    Did you know her telephone number?

A.    No, I didn't.

Q.    So is that if you wanted to communicate with Mona you would have to wait until she called you; is that correct?

A.    Yes.

Q.    Now, did you know that John was living with Mona?

A.    No, I didn't.

Q.    But you knew he was out of the house for a couple of months before this incident; did you not?

A.    Yes.

Q.    You didn't know where he was staying?