USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 7/3/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOHN CURRY, Plaintiff, -v- JOHN THEOS, *et al.*, Defendants. | : | 1:24-cv-4603-GHW <br> MEMORANDUM OPINION & ORDER |

GREGORY H. WOODS, United States District Judge:

Plaintiff John Curry filed this lawsuit under 42 U.S.C. § 1983 with a handwritten complaint less than two pages long. The complaint alleges that early one morning in 2023, three New York City Police Department officers arrived at the Bronx apartment of Mr. Curry's sister looking for Mr. Curry. The officers told her they did not need a warrant to enter and broke the door down. Once inside, they shot Mr. Curry with a stun gun, knocked him to the ground, and arrested him. Liberally construed to raise the strongest claims it suggests, the complaint alleges that the officers violated Mr. Curry's Fourth Amendment rights by entering his sister's apartment without a warrant and by using excessive force during his arrest. Because the complaint does not allege that Mr. Curry had a legitimate expectation of privacy in his sister's apartment or that the force used during the arrest was objectively unreasonable, Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND

### A. Facts[1]

At 6:00 a.m. on an unspecified date in 2023, Detective John Theos, Sergeant Odani

[1] The facts relevant to this motion are drawn exclusively from Plaintiff's second amended complaint, Dkt. No. 13, ("SAC"), and are accepted as true for the purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). When the plaintiff is *pro se*,

Acevedo, and Detective Thomas Accomando of the New York City Police Department ("Defendants") went to the Bronx apartment of Plaintiff's sister and asked her where Plaintiff was. SAC at 4. Plaintiff's sister asked Defendants if they had a warrant, and Defendants "stated that they didn't need a warrant." *Id.* Defendants then "broke the door down" and "shot [Plaintiff] with a stun gun." *Id.* Defendants were "knocking [Plaintiff] down" and "pulling [his] legs." *Id.* Plaintiff told Defendants that he has "a bad leg." *Id.* A neighbor of Plaintiff's sister witnessed the incident and asked Defendants, "why are you breaking the door down with no warrant[?]" *Id.* At some point after the incident, Defendants brought Plaintiff to Lincoln Hospital. *Id.*

Plaintiff's "back has been hurting [him] ever since," and he has "to use a cane to walk." *Id.* at 4–5. Plaintiff alleges that Defendants "v[iol]ated [his] rights" and that this incident "ruin[ed] [his] life and [his] family['s] life."[2] *Id.*

Exhibit B to the SAC includes pictures of the damage to his sister's door. *Id.* at 7–8. Exhibit C includes pictures of Defendants Accomando and Theos, although the SAC does not explain when or where the pictures were taken. *Id.* at 12. Exhibit E is a letter from the New York

---

however, some courts "will consider facts from the [p]laintiff's [previous complaint] that have not been repeated in the [amended complaint]." *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-cv-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (citations omitted); *see also, e.g.*, *Little v. City of New York*, No. 13-cv-3813, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("The plaintiff . . . appears to believe that the Amended Complaint supplements, rather than replaces, the Original Complaint. Because the plaintiff is proceeding pro se, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading."); *Camarano v. City of New York*, 624 F. Supp. 1144, 1147–48 (S.D.N.Y. 1986) ("Apparently viewing the amended complaint as supplemental, [plaintiff] did not repeat in his later filing the allegations set forth in the original complaint. . . . Since *pro se* civil rights complaints should be read with . . . generosity, [plaintiff's] complaint must be given the benefit of incorporation." (internal quotation marks and citation omitted)). Here, in granting Plaintiff leave to amend his original complaint, Chief Judge Swain expressly advised Plaintiff that because his amended complaint would "completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint." Dkt. No. 10 at 5. Accordingly, because Plaintiff was on notice that amended complaints supersede the prior pleading, the Court will not look to Plaintiff's original complaint or first amended complaint to supplement the SAC.

[2] Plaintiff also references a "sex offender claim," stating only, "the sex offender claim they slander my name and my family's name." SAC at 5. Exhibit D to the SAC is a letter from the NYPD's Sex Offender Monitoring Unit, informing Plaintiff of an upcoming registration appointment. *Id.* at 10. As explained in more detail in the Procedural History section, Chief Judge Swain dismissed this claim when Plaintiff raised it in the first amended complaint as beyond the scope of the permitted amendment and granted Plaintiff only limited leave to amend his claims arising from the 2023 law enforcement incident. Dkt. No. 12 at 4–5. To the extent Plaintiff seeks to reassert the sex offender registration claim in the SAC, it is again dismissed as beyond the scope of the permitted amendment.

City Civilian Complaint Review Board ("CCRB") dated May 15, 2025 that summarizes the disposition of a complaint filed by Plaintiff.[3] *Id.* at 14. The CCRB found the following allegations to be "Within NYPD Guidelines"[4]: Sergeant Acevedo's entry into and search of a location; officers' use of physical force against Plaintiff; Sergeant Acevedo's use of a non-lethal restraining device on Plaintiff; Detective Theos's and Sergeant Acevedo's use of physical force against an individual. *Id.* at 14–15. The CCRB was "Unable to Determine"[5] whether Detective Theos threatened to arrest an individual and whether Detective Accomando used a chokehold against Plaintiff. *Id.* The CCRB "Substantiated"[6] allegations that Detective Theos, Detective Accomando, and Sergeant Acevedo failed to activate their body-worn cameras. *Id.* at 15.

### B. Procedural History

Plaintiff filed the first complaint in this action on June 10, 2024, alleging violations of 42 U.S.C. § 1983 against Parole Officer L. Black and A. Ramirez. Dkt. No. 1. In an order dated January 2, 2025, Chief Judge Swain construed the complaint as asserting a Fourteenth Amendment due process claim challenging the procedures followed by the defendants when moving to revoke Plaintiff's parole. Dkt. No. 10 at 3–4. Chief Judge Swain granted Plaintiff leave to amend the complaint to allege additional facts concerning his due process claim because it was "unclear whether a probable cause hearing was held before his detention." *Id.* at 4.

Plaintiff filed the first amended complaint on February 3, 2025. Dkt. No. 11 ("FAC"). In

[3] The CCRB letter does not identify the date of the incident under investigation. However, because the letter concerns allegations against Defendants Theos, Acevedo, and Accomando—the same officers named in the SAC—and addresses allegations concerning entry into a location and the use of force that appear to correspond to the incident described in the SAC, the Court assumes for purposes of this motion that the letter relates to the events underlying Plaintiff's claims.

[4] The CCRB defines "Within NYPD Guidelines" as "[t]he allegation[s] occurred but were not considered misconduct, and were permissible under the laws of New York or the rules set by the NYPD in their Patrol Guide." SAC at 17.

[5] The CCRB defines "Unable to Determine" as "[t]he investigation was unable to determine if misconduct occurred under the law or the rules defined by the New York City Police Patrol Guide." SAC at 18.

[6] The CCRB defines "Substantiated" as "[t]he allegation occurred and was considered misconduct, and not permissible under the laws of New York or the rules set by the NYPD in their Patrol Guide and the officer should receive some sort of discipline." SAC at 17.

an order dated July 2, 2025, Chief Judge Swain concluded that the amended complaint did not cure the deficiencies identified in the January 2, 2025 order. Dkt. No. 12. Although the original complaint had been construed as asserting a due process challenge to Plaintiff's parole revocation proceedings, the amended complaint focused on Plaintiff's contention that he was improperly required to register as a sex offender and on allegations concerning separate encounters with law enforcement in 2023 and 2024. *Id.* at 2–4. Chief Judge Swain dismissed the due process claim because the FAC did "not allege any facts demonstrating that Plaintiff was denied due process during his parole revocation proceedings," dismissed the sex offender registration claim as "beyond the scope of the permitted amendment," and dismissed the 2023 and 2024 law enforcement claims because Plaintiff had not alleged facts showing that the named defendants were personally involved in those incidents. *Id.* at 3–4. Chief Judge Swain granted Plaintiff "limited leave to file a second amended complaint to state facts in support of his 2023 law enforcement claim." *Id.* at 4. Chief Judge Swain advised Plaintiff that should he wish to pursue his 2024 law enforcement claim and his sex offender registration claim, he must do so in a new civil action. *Id.* at 5.

Plaintiff filed a second amended complaint—the operative complaint—on July 22, 2025, naming Detective John Theos, Sergeant Odani Acevedo, and Detective Thomas Accomando of the New York City Police Department as defendants. *See generally* SAC. This action was reassigned to this Court on July 31, 2025.

The Court held a status conference with the parties on December 1, 2025, which Plaintiff attended in person. Dkt. No. 29. At the conference, the Court granted Defendants' request for leave to file a motion to dismiss and set a briefing schedule for the motion. *Id.* Following the conference, the Court issued an order memorializing that briefing schedule: Defendants' motion to dismiss was due no later than January 9, 2026; Plaintiff's opposition was due no later than four weeks after service of Defendants' motion; and Defendants' reply, if any, was due no later than two

weeks after service of Plaintiff's opposition. *Id.*

Plaintiff received that scheduling order; indeed, he appealed it to the Second Circuit on January 5, 2026. Dkt. No. 30. The same day, Plaintiff also filed an application for leave to proceed *in forma pauperis* to appeal the Court's scheduling order, which the Court denied. Dkt. Nos. 32, 25.

Defendants filed their motion to dismiss on January 9, 2026 and served it on Plaintiff by mail the same day. Dkt. Nos. 37–40. In accordance with the briefing schedule set by the Court's December 1, 2025 order, the deadline for Plaintiff to file his opposition was February 6, 2026—four weeks after January 9, 2026, the date of service of Defendants' motion.

On January 12, 2026, Plaintiff filed an affidavit supporting what appeared to be another request for the Court to permit his appeal of the Court's order *in forma pauperis*. Dkt. No. 41. On January 25, 2026, the Court again denied Plaintiff's application and reminded him of the briefing schedule and the consequences of not filing an opposition:

> Mr. Curry is reminded of his obligation to comply with the briefing schedule for the now-pending motion to dismiss his claims. *See* Dkt. Nos. 37–40. Should Mr. Curry fail to file a timely opposition to that motion, the Court will resolve the motion in the ordinary course without the benefit of Mr. Curry's views.

Dkt. No. 43. As of the date of this opinion—nearly five months after the February 6, 2026 deadline—Mr. Curry has not filed an opposition.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). However, "the tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)). Courts must afford *pro se* plaintiffs "'special solicitude' before granting motions to dismiss . . . ." *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant

rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

## III. DISCUSSION

The Court liberally construes Plaintiff's SAC to assert federal claims under 42 U.S.C. § 1983 based on alleged violations of the Fourth Amendment arising from the officers' alleged warrantless entry into the apartment where Plaintiff was arrested and the force used during that arrest. The Court also construes the SAC to assert state law claims for violations of the New York State Constitution, as well as claims for assault, battery, trespass, and false arrest. For the reasons that follow, each of these claims is dismissed.

### A. Federal Claims

Plaintiff has not adequately pleaded Section 1983 claims against the Defendants arising out of their alleged warrantless entry into his sister's apartment and use of force against Plaintiff during his arrest. To state a claim under Section 1983, a plaintiff must allege that the defendant "acted under color of state law and that [the defendant] deprived him of a right secured by the Constitution or laws of the United States." *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "Section 1983 does not in and of itself create any substantive rights; rather, a plaintiff bringing a § 1983 claim must demonstrate a violation of an independent federal constitutional or statutory right." *Watts v. New York City Police Dep't*, 100 F. Supp. 3d 314, 322 (S.D.N.Y. 2015) (citing *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 617–18 (1979)).

#### i. Plaintiff Does Not Plausibly Plead a Fourth Amendment Violation Based on the Alleged Warrantless Search

Plaintiff's Fourth Amendment challenge to the officers' entry into his sister's apartment fails

because the SAC does not plausibly allege that Plaintiff had a legitimate expectation of privacy in that apartment. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[G]enerally, as 'a basic principle of Fourth Amendment law,' entries into a home without a warrant, or 'searches and seizures inside a home without a warrant[,] are presumptively unreasonable." *United States v. Delva*, 858 F.3d 135, 147 (2d Cir. 2017) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984)). "Fourth Amendment rights are personal, and may be enforced only by persons whose *own* protection under the Amendment has been violated." *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)).

"In order to have standing to challenge the search of a home on Fourth Amendment grounds, an individual challenging the search must demonstrate that he had a legitimate expectation of privacy in the premises 'by showing that he owned the premises or that he occupied them and had dominion and control over them by leave of the owner.'" *Tarhaqa Allen v. N.Y.C. Police Dep't*, No. 07 Civ. 8682, 2010 WL 1790429, at *10 (S.D.N.Y. May 5, 2010) (quoting *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005)). "[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). The "ultimate inquiry" is "whether the host has so liberally shared his own privacy interest with his guest that it shelters the guest against unreasonable government intrusion." *Figueroa v. Mazza*, 825 F.3d 89, 109 (2d Cir. 2016). Factors relevant to this inquiry include "whether the guest's visit was social or commercial in nature, the length of time the guest spent on the premises, and the presence or absence of a previous connection between the guest and the householder," "whether the guest possesses a key to the dwelling, [and] is permitted to make use of the premises in the householder's absence," and whether the guest "keeps belongings in the host's home." *Id.*

The SAC does not plausibly allege facts showing that Plaintiff had a legitimate expectation of privacy in the apartment that was allegedly entered without a warrant. Plaintiff identifies 80 Bruckner Boulevard, Apartment 8C, Bronx, New York as the location where the events at issue occurred. SAC at 4. He alleges that officers came to "my sister Dolores['s] apartment" and asked his sister where he was. *Id.* Plaintiff alleges that his sister "ask[ed] them if they had a warrant to come and they stated that they didn't need a warrant" and that officers then broke down the door and entered the apartment. *Id.* Plaintiff further identifies a witness as his "sister['s] neighbor" and, in his request for relief, states, "I want them to fix my sister's door." *Id.* at 4–5. These allegations suggest that Plaintiff's sister had a privacy or possessory interest in the apartment that officers allegedly entered, but they do not show that Plaintiff had such an interest.

The SAC also does not contain factual allegations permitting the Court to infer that Plaintiff himself had a privacy interest in his sister's apartment. Plaintiff does not allege that he lived at the apartment at the time of the incident, possessed a key, was permitted to use the apartment in his sister's absence, kept belongings there, regularly stayed there, or otherwise exercised dominion and control over the premises. *See Figueroa*, 825 F.3d at 109. While the CCRB letter, dated May 15, 2025, SAC at 14, and the SAC, signed by Plaintiff on July 22, 2025, *id.* at 6, list Plaintiff's address as 80 Bruckner Boulevard, Apartment 8C, they do not establish that he resided there in 2023 when the incident occurred. Absent allegations showing either that Plaintiff occupied the apartment and exercised dominion and control over it, or that his relationship to the premises was such that his sister had "so liberally shared [her] own privacy interest" with him, Plaintiff has not plausibly pleaded that the officers' entry into the apartment violated his Fourth Amendment rights. *See Figueroa*, 825 F.3d at 109.

**ii. Plaintiff Does Not Plausibly Plead an Excessive Force Claim**

Plaintiff's allegations are insufficient to state a plausible claim that the officers used excessive

force in violation of the Fourth Amendment. "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's "'reasonableness" standard."' *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "To establish a claim of excessive force, 'a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, 'objectively unreasonable' under Fourth Amendment standards."' *Davis v. Rodriguez*, 364 F.3d 424, 431 (2d Cir. 2004) (quoting *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir. 1990)). "The test of reasonableness 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."' *Matusak v. Daminski*, 165 F.4th 702, 713 (2d Cir. 2026) (quoting *Graham*, 490 U.S. at 396).

The Fourth Amendment "does not prohibit police officers from using force during civilian encounters; it proscribes the use of *excessive* force." *Estremera v. City of Beacon*, No. 23 CV 2294, 2024 WL 1054406, at *4 (S.D.N.Y. Mar. 11, 2024) (emphasis added). The question is therefore not whether force was used but whether it was objectively unreasonable in light of the circumstances confronting the officers. *See Davis*, 364 F.3d at 431; *Graham*, 490 U.S. at 396–97. Thus, a plaintiff fails to state a Fourth Amendment excessive force claim if he "provides no facts from which the Court can infer any defendant used 'force beyond that which [was] warranted by the objective circumstances of [plaintiff's] arrest."' *See Lewis v. Westchester Cnty.*, No. 20 CV 9017, 2021 WL 3932626, at *4 (S.D.N.Y. Sept. 2, 2021) (quoting *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019)).

Here, Plaintiff alleges that officers "shot me with a stun gun," and were "knocking me down pulling my legs," SAC at 4, and that his back and leg have been "hurting . . . since" and that he must

"use a cane to walk," *id.* at 5. These allegations establish only that force was used, but the use of the force alleged is not per se unreasonable. *See, e.g.*, *Tracy v. Freshwater*, 623 F.3d 90, 97–98 (2d Cir. 2010) (finding it reasonable for officer to dive on and pin down suspect who had "managed to struggle free and was attempting to escape"); *MacLeod v. Town of Brattleboro*, 548 F. App'x 6, 8 (2d Cir. 2013) (summary order) (finding use of a taser "to subdue an actively non-compliant suspect . . . who posed a real and imminent threat to the safety of the officers and any bystanders" reasonable). Because Plaintiff makes no allegations regarding the circumstances confronting the officers, such as whether he was resisting arrest or attempting to flee, he has not plausibly pleaded that the force used was objectively unreasonable.

Plaintiff's excessive force claim is also insufficiently pleaded because he does not allege what force each named Defendant used against him. "[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004); *see also Demosthene v. City of New York*, 831 F. App'x 530, 535 (2d Cir. 2020) (summary order) ("It is axiomatic that claims under § 1983 for use of excessive force or failure to intervene require personal involvement to trigger liability."). Plaintiff alleges only that "they . . . shot me with a stun gun" and "[t]hey were knocking me down pulling my legs," without identifying which Defendant allegedly used what force. *See* SAC at 4. Although the CCRB letter attached to the SAC identifies allegations from Plaintiff's CCRB complaint, including that Defendant Acevedo "used a non-lethal restraining device on John Curry" and that Defendant Accomando "used a chokehold against John Curry," *id.* at 14–15, the SAC and CCRB letter fail to identify sufficiently "how each defendant was personally involved in the excessive force alleged." *See May v. Levy*, 659 F. Supp. 3d 323, 337 (E.D.N.Y. 2023).

Even liberally construing the SAC and accepting its factual allegations as true, Plaintiff has not pleaded that the officers violated his Fourth Amendment rights either by entering the apartment

where he was arrested or by using excessive force during the arrest. Plaintiff therefore has not plausibly stated a Section 1983 claim based on either alleged Fourth Amendment violation.

**B. Supplemental Jurisdiction**

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims that the SAC may be read to suggest. When a district court has original jurisdiction over claims in a case, it "'shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III.'" *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) (quoting 28 U.S.C. § 1367(a)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) ("Pendent jurisdiction . . . exists whenever there is a claim 'arising under (the) Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" (quoting U.S. Const. art. III, § 2)). Claims are "'part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).

The decision to exercise supplemental jurisdiction over a state law claim is by nature discretionary. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Where claims satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)." *Shahriar*, 659 F.3d at 245 (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)). Subsection 1367(c) permits a court to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original

> jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Here, subsection (3) applies because the Court has dismissed all the claims over which it had original jurisdiction. Thus, the Court may exercise its discretion to decline supplemental jurisdiction over any remaining state law claims.

Even "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citation omitted). Both the Second Circuit and the Supreme Court have "held that when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Gibbs*, 383 U.S. at 726). "Although this is not a mandatory rule, the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (internal quotation marks and citation omitted)). This is the usual case: the Court has evaluated the values set forth in *Gibbs* in the context of this case and concludes that they support the Court's decision to decline supplemental jurisdiction.

**C. Leave to Amend**

District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116,

123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

Nevertheless, leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . ." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). "[R]epeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend. *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

The Court cannot conclude at this stage that amendment would be futile. As discussed above, the SAC's deficiencies stem principally from the absence of factual allegations bearing on whether Plaintiff had a legitimate expectation of privacy in the apartment that officers entered and whether the force used during his arrest was objectively unreasonable under the circumstances. It is possible that Plaintiff could cure those deficiencies by alleging additional facts.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Section 1983 claims premised on the alleged warrantless entry and use of excessive force are dismissed without prejudice. Plaintiff is granted leave to amend, but solely to cure the deficiencies identified in this memorandum opinion and order.

Specifically, any amended complaint must allege facts sufficient to plausibly establish that Plaintiff had a legitimate expectation of privacy in his sister's apartment at the time of the incident and facts bearing on the circumstances confronting the officers that would support a plausible inference that the force used during his arrest was objectively unreasonable. Plaintiff must also allege how each Defendant was personally involved in the excessive force alleged.

Plaintiff may not use the amended complaint to raise new claims or revive claims that were dismissed by Chief Judge Swain, including the due process claim arising from his parole revocation proceedings, the sex offender registration claim, or any claims arising from the 2024 law enforcement incident. *See* Dkt. No. 12. Plaintiff is further advised that any amended complaint will replace and supersede the SAC in its entirety. The amended complaint must therefore stand on its own, and any facts, claims, or allegations that Plaintiff wishes to assert, including those previously set forth in the SAC, must be included in the amended complaint itself. Any amended complaint must be filed within 21 days of the date of this order.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 37 and mail a copy of this order to Plaintiff.

SO ORDERED.

Dated: July 3, 2026

GREGORY H. WOODS
United States District Judge