USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 10/13/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

JOHN CURRY,

Plaintiff,

-v-

JOHN THEOS, *et al.*,

Defendants.

------------------------------------------------------------ X

1:24-cv-4603-GHW

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

Plaintiff John Curry filed this lawsuit under 42 U.S.C. § 1983 alleging that early one morning in 2023, three New York City Police Department officers arrived at the Bronx apartment of his sister looking for him. The officers told her they did not need a warrant to enter and broke the door down. Once inside, they shot Plaintiff with a stun gun, knocked him to the ground, and arrested him. Liberally construed to raise the strongest claims it suggests, the complaint alleges that the officers violated Plaintiff's Fourth Amendment rights by entering his sister's apartment without a warrant and by using excessive force during his arrest. The Court previously dismissed Plaintiff's second amended complaint because it did not allege that Plaintiff had a legitimate expectation of privacy in his sister's apartment or that the force used during the arrest was objectively unreasonable, but granted him leave to amend the complaint to add any facts that might support his claims. Defendants now move to dismiss Plaintiff's third amended complaint. Because the third amended complaint does not cure the deficiencies identified in the Court's prior opinion, Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND

### A. Facts[1]

At 6:00 a.m. on December 11, 2023, Detective John Theos, Sergeant Odani Acevedo, and Detective Thomas Accomando ("Defendants") of the New York City Police Department (the "NYPD") went to the Bronx apartment of Plaintiff's sister and asked her where Plaintiff was. TAC at 4–6. Plaintiff's sister asked whether they had a warrant, and Defendants "tried to state that they didn't need a warrant." *Id.* at 5. Defendants then "continued to break the door down, using a knocker" and "shot [Plaintiff] with a stun gun." *Id.* Defendants "were knocking [Plaintiff] down" and "pulling on [his] legs" after he told them he had "a bad leg." *Id.* A neighbor of Plaintiff's sister witnessed the incident and asked Defendants, "why they were breaking the door with no warrant." *Id.* Defendants later brought Plaintiff to Lincoln Hospital for treatment. *Id.* at 5–6.

Plaintiff states that his right leg and back have "been bad since" the incident and he "need[s] to use a can[e]." *Id.* at 6. Plaintiff alleges that Defendants "violated [his] rights" and that this incident "ruined [his] life and [his] family's life." *Id.* at 5–6. Plaintiff also invokes the Fourteenth

---

[1] The facts relevant to this motion are drawn from Plaintiff's third amended complaint and its attachments, Dkt. No. 47 ("TAC"), and, where noted, his opposition, Dkt. No. 57 ("Opp'n"). Those facts are accepted as true for purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). When the plaintiff is *pro se*, however, some courts "will consider facts from the [p]laintiff's [previous complaint] that have not been repeated in the [amended complaint]." *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-cv-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (citations omitted); *see also, e.g.*, *Little v. City of New York*, No. 13-cv-3813, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("The plaintiff . . . appears to believe that the Amended Complaint supplements, rather than replaces, the Original Complaint. Because the plaintiff is proceeding pro se, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading."); *Camarano v. City of New York*, 624 F. Supp. 1144, 1147–48 (S.D.N.Y. 1986) ("Apparently viewing the amended complaint as supplemental, [plaintiff] did not repeat in his later filing the allegations set forth in the original complaint. . . . Since *pro se* civil rights complaints should be read with . . . generosity, [plaintiff's] complaint must be given the benefit of incorporation." (internal quotation marks and citation omitted)). Here, in granting Plaintiff leave to file a third amended complaint, the Court advised Plaintiff: "[A]ny amended complaint will replace and supersede the SAC in its entirety. The amended complaint must therefore stand on its own, and any facts, claims, or allegations that Plaintiff wishes to assert, including those previously set forth in the SAC, must be included in the amended complaint itself." Dkt. No. 46 ("*Curry I*") at 15. Accordingly, because Plaintiff was on notice that his amended complaint would supersede the prior pleadings, the Court will not look to Plaintiff's original complaint, first amended complaint, or second amended complaint to supplement the TAC.

Amendment, writing "no warrant" and "charged me with a case I've never been legally charged or accused with."[2] *Id.* at 2.

Plaintiff attaches three letters to the TAC. The first, signed by Plaintiff and dated July 14, 2026, states that "Sacnitic Gomez came to court on 12/8/2025 and stated that there was no incident on record about me getting shot with the stun gun" and that "[s]he fabricated in court on file." TAC at 8. He adds, "I have proof from Lincoln Hospital that they (the police) had brought me into the hospital seeking medical attention after they're the ones who shot me." *Id.* Plaintiff also attaches medical records from Lincoln Medical Center, dated December 11, 2023, documenting the treatment he received at the hospital. *Id.* at 9–15. The records state that he was brought in by "NYPD in custody requesting removal of taser prongs" and that he was "tasered during events leading up to arrest." *Id.* at 9. They also note there were "2 taser prongs" on the left side of Plaintiff's back and that he "[d]enies other complaints" and has "[n]o problems with ambulation." *Id.* The records also state that the "[t]aser prongs [were] removed at bedside." *Id.* at 11.

A second letter, notarized on January 2, 2026, is signed by Jamel Frazier, who the TAC identifies as a neighbor of Plaintiff's sister. *Id.* at 5, 16. Mr. Frazier states that "on the date provided[,] and a few times before," he and his child were awakened by "repeated banging from N.Y.P.D. at around 5AM–6AM" and that the officers told him to "go home and mind my business." *Id.* at 16.

[2] Although Defendants construe Plaintiff's statement that he was charged with a case as potentially asserting claims for false arrest or malicious prosecution, *see* Dkt. No. 53 at 10–11, the Court understands the statement to refer to Plaintiff's previously dismissed sex offender registration claim. Plaintiff also states in the TAC that "the sex offender claim they slander my name and my family's name." TAC at 6. And in his opposition, Plaintiff asserts that "a sex offense case" was "put on my record in error." Opp'n at 2. This interpretation is also consistent with Plaintiff's first amended complaint, in which he alleged that a "sex offender" designation was placed on his "record" even though he "never got charge [sic] for it." Dkt. No. 11 at 6. Chief Judge Swain previously dismissed Plaintiff's sex offender registration claim as beyond the scope of the permitted amendment without prejudice to its assertion in a separate action. Dkt. No. 12 at 3–4. The Court again dismissed the claim on the same ground and expressly prohibited Plaintiff from reasserting it in the TAC. *Curry I* at 2 n.2, 15. Accordingly, to the extent Plaintiff seeks to reassert his sex offender registration claim, it is again dismissed as beyond the scope of the permitted amendment.

The final letter is signed by Kenneth Crews, who identifies himself as Plaintiff's nephew. *Id.* at 17. He states that "on the morning of June"[3]—the rest of the date is cut off—Defendants Theos, Accomando, and Acevedo "came to my grandmother[']s house around 6 am[,] banging and forcing there [sic] way into t[he] house" and proceeded "to tussle and shov[e] my Aunt[,] tackling her to the ground to detain my uncle illegally." *Id.* Mr. Crews states that the "thre[e] officers repeadly [sic] tazed [sic] my uncle tryin[g] [to] break & dislocate his arm while trying [to] han[d]cuff him." *Id.* Mr. Crews also states that "the officers dragged [Plaintiff] out of the house without shoes or h[is] glasses[,] ignoring the fact [that Plaintiff] kept saying he couldn't see and tha[t] he was bare foot [sic]." *Id.* He concludes, "I am a witness to this unlawful action." *Id.*

### B. Procedural History

Plaintiff filed this action on June 10, 2024, alleging violations of 42 U.S.C. § 1983 against Parole Officer L. Black and A. Ramirez. Dkt. No. 1. On January 2, 2025, Chief Judge Swain construed the complaint as asserting a Fourteenth Amendment due process claim challenging the procedures followed by the defendants when moving to revoke Plaintiff's parole. Dkt. No. 10 at 3–4. Chief Judge Swain granted Plaintiff leave to amend the complaint to allege additional facts concerning his due process claim because it was "unclear whether a probable cause hearing was held before his detention." *Id.* at 4.

Plaintiff filed the first amended complaint (the "FAC") on February 3, 2025. Dkt. No. 11. On July 2, 2025, Chief Judge Swain concluded that the FAC did not cure the deficiencies identified in the January 2, 2025 order. Dkt. No. 12. The FAC focused on Plaintiff's contention that he was improperly required to register as a sex offender and on allegations concerning separate encounters with law enforcement in 2023 and 2024. *Id.* at 2–4. Chief Judge Swain dismissed the due process claim because the FAC did "not allege any facts demonstrating that Plaintiff was denied due process

[3] The medical records attached to the TAC indicate that Plaintiff was treated on December 11, 2023. TAC at 9–15.

during his parole revocation proceedings," dismissed the sex offender registration claim as "beyond the scope of the permitted amendment," and dismissed the 2023 and 2024 law enforcement claims because Plaintiff had not alleged facts showing that the named defendants were personally involved in those incidents. *Id.* at 3–4. Chief Judge Swain granted Plaintiff "limited leave to file a second amended complaint to state facts in support of his 2023 law enforcement claim" and advised Plaintiff that should he wish to pursue his 2024 law enforcement claim and his sex offender registration claim, he must do so in a new civil action. *Id.* at 4–5.

Plaintiff filed a second amended complaint (the "SAC") on July 22, 2025, naming Detective Theos, Sergeant Acevedo, and Detective Accomando as defendants. Dkt. No. 13. The allegations in the SAC are nearly identical to those in the TAC, with the exception of the correspondence incorporated into the TAC. On July 3, 2026, the Court granted Defendants' unopposed motion to dismiss the SAC. *Curry I*. The Court dismissed Plaintiff's Section 1983 claim based on Defendants' alleged warrantless entry into his sister's apartment because the SAC did not plausibly allege that Plaintiff had a legitimate expectation of privacy in that apartment. *Id.* at 7–9. The Court dismissed Plaintiff's excessive force claim because he made "no allegations regarding the circumstances confronting the officers, such as whether he was resisting arrest or attempting to flee" and thus had "not plausibly pleaded that the force used was objectively unreasonable." *Id.* at 11. The Court also found that Plaintiff's excessive force claim was "insufficiently pleaded because he does not allege what force each named Defendant used against him." *Id.*

Having dismissed Plaintiff's claims without prejudice, the Court granted limited leave to amend. *Id.* at 14–15. The Court specified how to cure the deficiencies:

> Plaintiff is granted leave to amend, but solely to cure the deficiencies identified in this memorandum opinion and order. Specifically, any amended complaint must allege facts sufficient to plausibly establish that Plaintiff had a legitimate expectation of privacy in his sister's apartment at the time of the incident and facts bearing on the circumstances confronting the officers that would support a plausible inference that the force used during his arrest was objectively unreasonable. Plaintiff must also allege

> how each Defendant was personally involved in the excessive force alleged.

*Id.* The Court also limited the scope of the amendment:

> Plaintiff may not use the amended complaint to raise new claims or revive claims that were dismissed by Chief Judge Swain, including the due process claim arising from his parole revocation proceedings, the sex offender registration claim, or any claims arising from the 2024 law enforcement incident.

*Id.* at 15.

On July 14, 2026, Plaintiff timely filed the TAC. Dkt. No. 47. On July 29, 2026, Defendants requested leave to file a motion to dismiss the TAC. Dkt. No. 48. On July 31, 2026, the Court granted that request and set a briefing schedule: Defendants' motion was due by August 10, 2026; Plaintiff's opposition was due no later than four weeks after service of the motion; and Defendants' reply was due no later than two weeks after service of the opposition. Dkt. No. 51 at 4. The Court warned Plaintiff that should he "fail to file a timely opposition to that motion, the Court will resolve the motion in the ordinary course without the benefit of Mr. Curry's views." *Id.*

On August 10, 2026, Defendants filed their motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Dkt. No. 52. Defendants served the motion the same day. Dkt. No. 55. Plaintiff filed an opposition on September 15, 2026, consisting of a one-page letter and two Letters of Incarceration from the New York City Department of Correction. Dkt. Nos. 56–57.

In his letter, Plaintiff asks the Court to reconsider his case, which he states has had "a profound and disruptive impact on my life and the lives of my family members." Opp'n at 2. He states, "I have been on parole for a sex offense case that was put on my record in error, which the State of New York has acknowledged" and that "[d]espite this acknowledgement, the case remains on my record, and I continue to be held accountable for parole restrictions connected to this wrongful conviction." *Id.* He adds, "Unfortunately this situation has resulted in 3 seperate [sic] arrests; one on 8/11/ , one on 8/21/2026, and one on 9/8/2026. The first arrest included my

sister's apartment door being kicked down."[4] *Id.*

On October 1, 2026, Defendants requested that the Court treat their motion as unopposed. Dkt. No. 60. They identified September 7, 2026 as Plaintiff's opposition deadline and argued that his opposition was untimely and, in any event, nonresponsive.[5] *Id.* at 1–2. The Letters of Incarceration attached to Plaintiff's opposition indicate that he was incarcerated from August 11, 2026 to August 20, 2026 and from August 21, 2026 to September 8, 2026. In light of Plaintiff's incarceration during much of the briefing period, the Court will consider his opposition despite its untimeliness. The opposition, however, does not address any argument raised in Defendants' motion to dismiss.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[4] The first date does not include a year. It is unclear whether the "first arrest" during which Plaintiff's sister's door was "kicked down" refers to the incident that is the subject of his claims, which the medical records indicate occurred on December 11, 2023.

[5] Plaintiff's opposition was, in fact, due on September 8, 2026 because September 7, 2026 was a legal holiday. *See* Fed. R. Civ. P. 6(a)(1)(C).

*Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)). Courts must afford *pro se* plaintiffs "'special solicitude' before granting motions to dismiss . . . ." *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65

(2d Cir. 1997))). Because Plaintiff is proceeding *pro se*, the Court "may consider factual allegations made by a *pro se* party in his papers opposing the motion." *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

## III. DISCUSSION

The Court liberally construes Plaintiff's TAC to assert federal claims under 42 U.S.C. § 1983 based on alleged violations of the Fourth Amendment arising from Defendants' alleged warrantless entry into the apartment where Plaintiff was arrested and the force used during that arrest. The Court also construes the TAC to assert state law claims for violations of the New York State Constitution, as well as claims for assault, battery, trespass, and false arrest. For the reasons that follow, each of these claims is dismissed.

### A. Federal Claims

Plaintiff has not adequately pleaded Section 1983 claims based on Defendants' alleged warrantless entry into his sister's apartment or their use of force during his arrest. To state a claim under Section 1983, a plaintiff must allege that the defendant "acted under color of state law and that [the defendant] deprived him of a right secured by the Constitution or laws of the United States." *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "Section 1983 does not in and of itself create any substantive rights; rather, a plaintiff bringing a § 1983 claim must demonstrate a violation of an independent federal constitutional or statutory right." *Watts v. N.Y.C. Police Dep't*, 100 F. Supp. 3d 314, 322 (S.D.N.Y. 2015) (citing *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 617–18 (1979)).

#### i. Plaintiff Does Not Plausibly Plead a Fourth Amendment Violation Based on the Alleged Warrantless Search

Plaintiff's Fourth Amendment challenge to the officers' entry into his sister's apartment fails because the TAC still does not plausibly allege that Plaintiff had a legitimate expectation of privacy in that apartment. The Fourth Amendment protects the "right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[G]enerally, as 'a basic principle of Fourth Amendment law,' entries into a home without a warrant, or 'searches and seizures inside a home without a warrant[,] are presumptively unreasonable.'" *United States v. Delva*, 858 F.3d 135, 147 (2d Cir. 2017) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984)). "Fourth Amendment rights are personal, and may be enforced only by persons whose *own* protection under the Amendment has been violated." *United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)).

"In order to have standing to challenge the search of a home on Fourth Amendment grounds, an individual challenging the search must demonstrate that he had a legitimate expectation of privacy in the premises 'by showing that he owned the premises or that he occupied them and had dominion and control over them by leave of the owner.'" *Tarhaqa Allen v. N.Y.C. Police Dep't*, No. 07 Civ. 8682, 2010 WL 1790429, at *10 (S.D.N.Y. May 5, 2010) (quoting *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005)). "[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). The "ultimate inquiry" is "whether the host has so liberally shared his own privacy interest with his guest that it shelters the guest against unreasonable government intrusion." *Figueroa v. Mazza*, 825 F.3d 89, 109 (2d Cir. 2016). Factors relevant to this inquiry include "whether the guest's visit was social or commercial in nature, the length of time the guest spent on the premises, and the presence or absence of a previous connection between the guest and the householder," "whether the guest possesses a key to the dwelling, [and] is permitted to make use of the premises in the householder's absence," and whether the guest "keeps belongings in the host's home." *Id.*

The TAC does not plausibly allege facts showing that Plaintiff had a legitimate expectation of privacy in the apartment that the officers allegedly entered without a warrant. The TAC largely

repeats the SAC's allegations about the apartment. Plaintiff again identifies 80 Bruckner Boulevard, Apt. 8C, Bronx, New York, as the location where the events at issue occurred. TAC at 5. He alleges that officers came to "my sister[] Dolores['s] apartment" and asked his sister where he was. *Id.* Plaintiff identifies a witness as his "sister['s] neighbor" and, in his request for relief, states, "I want my sister[']s door fixed." *Id.* at 5–6. The letter from Plaintiff's nephew describes the location of the incident as his "grandmother[']s house." *Id.* at 17. These allegations suggest that Plaintiff's relatives had a privacy or possessory interest in the apartment, but they do not plausibly allege that Plaintiff had such an interest.

Plaintiff does not allege that he lived at the apartment at the time of the incident, possessed a key, was permitted to use the apartment in his sister's absence, kept belongings there, regularly stayed there, or otherwise exercised dominion and control over the premises. *See Figueroa*, 825 F.3d at 109. The TAC, signed on July 14, 2026, and Plaintiff's opposition, signed on September 15, 2026, list his address as 80 Bruckner Boulevard, Apt. 8C. TAC at 3, 8; Opp'n at 2. But they do not plausibly allege that he resided there in 2023 when the incident occurred. Absent allegations showing either that Plaintiff occupied the apartment and exercised dominion and control over it, or that his relationship to the premises was such that his relatives had "so liberally shared [their] own privacy interest" with him, Plaintiff has not plausibly pleaded that Defendants' entry into the apartment violated his Fourth Amendment rights. *See Figueroa*, 825 F.3d at 109.

**ii. Plaintiff Does Not Plausibly Plead an Excessive Force Claim**

As with the SAC, the TAC does not plausibly allege that the officers used excessive force in violation of the Fourth Amendment. "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's "'reasonableness" standard.'" *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "To establish a claim of excessive force,

'a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, 'objectively unreasonable' under Fourth Amendment standards.'" *Davis v. Rodriguez*, 364 F.3d 424, 431 (2d Cir. 2004) (quoting *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir. 1990)). "The test of reasonableness 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Matusak v. Daminski*, 165 F.4th 702, 713 (2d Cir. 2026) (quoting *Graham*, 490 U.S. at 396).

The Fourth Amendment "does not prohibit police officers from using force during civilian encounters; it proscribes the use of *excessive* force." *Estremera v. City of Beacon*, No. 23 CV 2294, 2024 WL 1054406, at *4 (S.D.N.Y. Mar. 11, 2024) (emphasis added). The question is therefore not whether force was used but whether it was objectively unreasonable in light of the circumstances confronting the officers. *See Davis*, 364 F.3d at 431; *Graham*, 490 U.S. at 396–97. Thus, a plaintiff fails to state a Fourth Amendment excessive force claim if he "provides no facts from which the Court can infer any defendant used 'force beyond that which [was] warranted by the objective circumstances of [plaintiff's] arrest.'" *See Lewis v. Westchester Cnty.*, No. 20 CV 9017, 2021 WL 3932626, at *4 (S.D.N.Y. Sept. 2, 2021) (quoting *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019)).

Here, Plaintiff alleges that officers "shot me with a stun gun" and were "knocking me down and pulling on my legs." TAC at 5. He states that his back and leg have been "bad since" and that he must use a cane to walk. *Id.* at 6. Plaintiff also alleges that the officers tased him "for no reason." *Id.* at 6. That assertion states a conclusion about the reasonableness of the force, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Plaintiff's nephew states that the officers repeatedly "tazed

[sic] my uncle tryin[g] [to] break & dislocate his arm while trying [to] han[d]cuff him" and that the officers "dragged" Plaintiff out of the house. TAC at 17. The medical records corroborate Plaintiff's allegation that he was tased—an allegation the Court must already accept as true for purposes of this motion, *see, e.g.*, *Town of Babylon*, 699 F.3d at 227—but do not explain the circumstances confronting the officers, stating only that Plaintiff was "tasered during events leading up to arrest," TAC at 9.

The TAC and its attachments describe the force used but do not supply the factual context, such as whether Plaintiff was resisting arrest or attempting to flee, from which the Court could infer that the force was objectively unreasonable. *See, e.g.*, *Tracy v. Freshwater*, 623 F.3d 90, 97–98 (2d Cir. 2010) (finding it reasonable for officer to dive on and pin down suspect who had "managed to struggle free and was attempting to escape"); *MacLeod v. Town of Brattleboro*, 548 F. App'x 6, 8 (2d Cir. 2013) (summary order) (finding use of a taser "to subdue an actively non-compliant suspect . . . who posed a real and imminent threat to the safety of the officers and any bystanders" reasonable).

The TAC also fails to allege what force each named Defendant used against Plaintiff. "[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004); *see also Demosthene v. City of New York*, 831 F. App'x 530, 535 (2d Cir. 2020) (summary order) ("It is axiomatic that claims under § 1983 for use of excessive force or failure to intervene require personal involvement to trigger liability.").

Plaintiff alleges only that "[t]hey shot me with a stun gun," "[t]hey were knocking me down and pulling on my legs," and "[t]hey violated my rights," without identifying which Defendant allegedly used what force. TAC at 5–6. Mr. Crews likewise describes the conduct of the "thre[e] officers" collectively. *Id.* at 17. Accordingly, the TAC fails to identify sufficiently "how each defendant was personally involved in the excessive force alleged." *See May v. Levy*, 659 F. Supp. 3d

323, 337 (E.D.N.Y. 2023).

Even liberally construing the TAC and accepting its factual allegations as true, Plaintiff has not plausibly alleged that Defendants violated his Fourth Amendment rights by entering the apartment or using excessive force during his arrest. Both Section 1983 claims are therefore dismissed.

**B. Supplemental Jurisdiction**

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims that the TAC may be read to suggest. When a district court has original jurisdiction over claims in a case, it "'shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III.'" *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) (quoting 28 U.S.C. § 1367(a)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) ("Pendent jurisdiction . . . exists whenever there is a claim 'arising under (the) Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" (quoting U.S. Const. art. III, § 2)). Claims are "'part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).

The decision to exercise supplemental jurisdiction over a state law claim is by nature discretionary. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Where claims satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)." *Shahriar*, 659 F.3d at 245 (quoting *Itar-Tass Russian News Agency v. Russian Kurier,*

*Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)). Subsection 1367(c) permits a court to decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Here, subsection (3) applies because the Court has dismissed all the claims over which it had original jurisdiction. Thus, the Court may exercise its discretion to decline supplemental jurisdiction over any remaining state law claims.

Even "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citation omitted). Both the Second Circuit and the Supreme Court have "held that when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Gibbs*, 383 U.S. at 726). "Although this is not a mandatory rule, the Supreme Court has stated that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (internal quotation marks and citation omitted)). This is the usual case: the Court has evaluated the values set forth in *Gibbs* in the context of this case and concludes that they favor declining supplemental jurisdiction.

### C. Leave to Amend

District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

Nevertheless, leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . ." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). "[R]epeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend. *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (2d Cir. 1998). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

The Court's prior opinion identified the allegations needed to cure the SAC's deficiencies. For the warrantless entry claim, the Court explained that Plaintiff had not alleged that he had a privacy interest in the apartment, such as by pleading that "he lived at the apartment at the time of the incident, possessed a key, was permitted to use the apartment in his sister's absence, kept belongings there, regularly stayed there, or otherwise exercised dominion and control over the premises." *Curry I* at 9. To cure that deficiency, the Court instructed that Plaintiff "must allege facts

sufficient to plausibly establish that Plaintiff had a legitimate expectation of privacy in his sister's apartment at the time of the incident." *Id.* at 15.

For the excessive force claim, the Court explained that Plaintiff "makes no allegations regarding the circumstances confronting the officers, such as whether he was resisting arrest or attempting to flee" and instructed that he must allege "facts bearing on the circumstances confronting the officers that would support a plausible inference that the force used during his arrest was objectively unreasonable." *Id.* at 11, 15. Because Plaintiff had not alleged "what force each named Defendant used against him," the Court instructed him to allege "how each Defendant was personally involved in the excessive force alleged." *Id.* at 11, 15.

Despite that guidance, the TAC largely repeats Plaintiff's earlier allegations, and the new attachments do not cure the identified deficiencies. Although the Court should "freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "[w]hen a plaintiff was aware 'of the deficiencies in his complaint when he first amended,' he 'clearly has no right to a second amendment [even if] the proposed second amended complaint in fact cures the defects of the first.'" *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018) (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978)). Because Plaintiff has failed to cure the deficiencies identified by the Court, the Court denies further leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Section 1983 claims premised on the alleged warrantless entry and use of excessive force are dismissed with prejudice and without leave to amend. Plaintiff's state law claims are dismissed without prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 52 and 56, to enter judgment for Defendants, to close this case, and to mail a copy of this order to Plaintiff.

SO ORDERED.

Dated: October 13, 2026
New York, New York

GREGORY H. WOODS
United States District Judge